## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

WILLIAM F. HASSAY, JR.,        *
303 Pleasant Ridge Drive        *
Apartment 104
Owings Mills, Maryland 21117    *

        *Plaintiff,*        *

        v.        *     Civil Action No. _____

MAYOR AND CITY COUNCIL OF    *
OCEAN CITY, MARYLAND,
City Hall        *
301 Baltimore Avenue
Ocean City, Maryland 21842     *

MICHAEL COLBERT, in his official   *
capacity as Acting Police Chief,
Ocean City Police Department,     *
6501 Coastal Highway
Ocean City, Maryland 21842     *

        *Defendants.*        *

     *   *   *   *   *   *   *   *   *

## COMPLAINT

### I. Nature of the Action

1.     This is an action to vindicate the fundamental right, under the First Amendment to the United States Constitution, to engage in speech freely in a public forum.

2.     Plaintiff William F. Hassay, Jr., is an accomplished violinist who wishes to perform his music on the public boardwalk in Ocean City, Maryland, but has been threatened with arrest for attempting to do so, pursuant to an unconstitutional noise ordinance.

3.     Over the last 25 years, Defendant Mayor and City Council of Ocean City, Maryland ("**Ocean City**") and its police department have enacted and enforced a series of

measures unconstitutionally restricting the First Amendment rights of street performers like Mr. Hassay. The latest in this line of restrictions was adopted in early 2012, in the form of a noise ordinance applicable to Ocean City's boardwalk year-round, at all times of the day and night, that prohibits music from instruments and devices that is audible at a distance of 30 feet.

4.      On two occasions in June 2012, Mr. Hassay was threatened by Ocean City police officers with citations for violations of the noise ordinance when he attempted to perform his music on the boardwalk. As a result, he was unable to perform throughout the remainder of the 2012 summer season. Mr. Hassay brings this action to challenge the enforcement of Ocean City's unlawful noise ordinance against him in 2012, and to enjoin its enforcement in the future.

## II. Jurisdiction and Venue

5.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. The Court may grant declaratory and injunctive relief pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 2201, and/or Rules 57 and 65 of the Federal Rules of Civil Procedure.

6.      Venue is proper in this district under 28 U.S.C. § 1391(b) because the events that give rise to this action occurred within this district.

## III. Parties

7.      Plaintiff William F. Hassay, Jr. is, and at all relevant times was, a citizen of Maryland residing in this district. He has been injured by the Defendants' acts and omissions as set forth below.

8.     Defendant Ocean City is a duly organized and existing municipality under Maryland law, located in this district.  It has the capacity to sue and be sued.

9.     Defendant Michael Colbert is the Acting Police Chief of the Ocean City Police Department, and is responsible for leading the police department and all of it officers in the enforcement of Maryland and Ocean City laws.  He is sued in his official capacity only.

## IV. Facts Giving Rise To This Action

### A. Background

10.     As this Court has previously described, Ocean City, Maryland is "a seaside community located on Maryland's Eastern Shore, situated on a long, narrow spit of land" and serves as "one of Maryland's major summer vacation destinations."  *Chase v. Town of Ocean City*, 825 F. Supp. 2d 599, 603-04 (D. Md. 2011).

11.     Millions of vacationers visit Ocean City each year, with July and August being the peak months for tourism.  *Id*.  At the center of Ocean City's appeal for tourists is its renowned beachfront boardwalk (the "**Boardwalk**"), "a wooden pedestrian walkway that is located between the ocean beach and the paved streets of Ocean City . . . lined with shops and attractions for pedestrians."  *Id.* at 604.

12.     In promoting its Boardwalk, Ocean City touts its festive atmosphere, featuring rides, arcades, performers, shops and restaurants:  "In short, it's three miles of highly concentrated fun."[1]

13.     As this Court has conclusively ruled, the Ocean City Boardwalk is also a quintessential "public forum," for purposes of constitutional analysis.  *Chase*, 825 F. Supp. 2d at

---

[1] See Ocean City's official office of tourism website:  http://ococean.com/things-to-do/boardwalk.

615; *see also Markowitz v. Mayor and City Council of Ocean City*, No. MJG-95-1676 (D. Md. June 22, 1995) (slip op.). This means that the public has a right to engage in speech and artistic endeavors freely on the Boardwalk, and that the United States Constitution permits only limited restrictions on that protected activity. *Id.*

14.    Yet, while promoting the Boardwalk as a fun and festive summer tourist mecca, Ocean City has for at least 25 years waged war against free speech and artistic performances on the Boardwalk. Time after time, in a variety of ways, Ocean City and its police department have enforced restrictions against those who seek to engage in protected First Amendment activities on the Boardwalk. In response, the affected individuals, often assisted by the American Civil Liberties Union ("**ACLU**"), have challenged the infringement on their constitutional freedoms. While these challenges have almost always been successful, Ocean City's retreats have typically been short-lived. That is, after suspension or rescission of the offending laws in the immediate aftermath of challenges, Ocean City officials often have merely shifted course and developed some alternative measure aimed at restricting performances and speech on the Boardwalk.

15.    Examples of the unlawful restrictions adopted by Ocean City, beginning in 1988, and continuing until 2012, include, but are not limited to, the following:

a.    In 1988, Ocean City prohibited Sandra Kay Johnson and Paul Belanger, a clown and a juggler who worked as a duet, from performing on the Boardwalk, asserting that the performances violated a provision of Ocean City's Code barring "peddling, soliciting, distributing, and hawking" on the Boardwalk. Johnson and Belanger, assisted by the ACLU, challenged these restrictions and an agreement was negotiated without the need for litigation, permitting the two to perform on the Boardwalk during the summer of 1989. At the time of the settlement, Ocean City agreed to amend its ordinance to provide an exception for street performers.

b.    In May of 1995, the Chair of the Maryland Libertarian Party and two street performers (a juggler and a puppeteer), assisted by the ACLU, sued Ocean City, challenging a newly-enacted ordinance that overturned the exemption to the soliciting ban negotiated by the ACLU and Ocean City in the 1988 case of Johnson and Belanger. *Markowitz v. Mayor & City Council of Ocean City*, Civil

Action No. MJG-95-1676.   The new ordinance prohibited all "peddling, soliciting, distributing and hawking" throughout the entire length of the Boardwalk, with no exceptions for speech and activities protected by the First Amendment.   It had been applied both to prohibit political candidates from leafleting on the Boardwalk, and to bar artistic street performances.   Following expedited discovery and an evidentiary hearing, Judge Marvin Garbis ruled for the plaintiffs, striking down Ocean City's ordinance as facially unconstitutional.

c.    In May of 2005, the ACLU represented Adam Pate, a caricature artist who was forbidden from practicing his art on the Boardwalk under a newly-enacted ordinance unconstitutionally prohibiting street performers from accepting tips (or anything of value) in connection with their performances.   Upon threat of litigation, Ocean City suspended enforcement of the ordinance, and later rescinded it.

d.    In the summer of 2009, William F. Hassay, Jr.—the Plaintiff in the instant case—and other street performers were told that they could no longer perform their acts on the Boardwalk because they utilized amplification equipment or another electronic sound system that had been banned by a new law.   Assisted by the ACLU, the performers challenged the amplification ban as unconstitutional, under long-settled court precedents.   Under threat of litigation, Ocean City agreed to suspend the ban, and pledged to rescind it.

e.    In the summer of 2011, spray paint artist Mark Chase, assisted by the Rutherford Institute, filed suit against Ocean City, challenging its permitting scheme for street performers.   *Chase v. Town of Ocean City,* 825 F.Supp. 2d 599 (D. Md. 2011).   This Court granted a preliminary injunction in September of 2011, enjoining Ocean City's permitting scheme as unconstitutional.   Thereafter, a settlement agreement was reached making the injunction permanent, thus abolishing the permit requirement for street performers.[2]

---

[2] In addition to these incidents involving street performers on the Ocean City Boardwalk, Ocean City has restricted exercise of First Amendment freedoms of political activists as well. Examples of this type of conflict include the following:

1)    On a Friday night in late June of 2001, politician Robin Ficker, who was campaigning throughout the state for a lower sales tax, took his campaign to the Ocean City Boardwalk, where he attempted to engage in informational leafleting about the issue.   Mr. Ficker was informed by police that leafleting on the Boardwalk was illegal unless one obtained a prior permit, and that such permits could not be obtained on weekends because the City Clerk's office was closed. Mr. Ficker complained about this infringement of his rights to the ACLU, and the ACLU subsequently contacted the City by letter on Ficker's behalf, complaining that—as the Court had ruled in *Markowitz*—it is unconstitutional for police to require a permit for an individual to engage in First Amendment activities in a public forum.   The City Solicitor wrote back agreeing that this action was

B. Ocean City's Noise Ordinance

16.     Perhaps due, in whole or part, to displeasure with this Court's ruling in *Chase* enjoining Ocean City's prior permitting scheme as a means for restricting street performers, Ocean City officials began, in late 2011 and early 2012, to consider new ways to regulate speech and artistic performances on the Boardwalk.

17.     At a January 10, 2012 work session of Ocean City's Mayor and City Council,[3] an amendment to Ocean City's 1970s-era noise ordinance (the "**Noise Ordinance**") was proposed. Restrictions on noise were discussed both as a means for regulating businesses that play music considered objectionable by some Ocean City officials, and for controlling street performers. Police Captain Kevin Kirstein noted that in reviewing the existing Noise Ordinance and considering its application to the Boardwalk, he and the City Solicitor had "found some teeth in the law" that would enable them to regulate street performers and "shut that down."[4]

18.     Ordinance 2012-2 was introduced for a "first reading" at the January 17, 2012 session of the Mayor and City Council, and stated that a noise violation would be deemed to have occurred on the Boardwalk if music played from an instrument or device could be heard

---

unconstitutional, apologizing to Mr. Ficker, and blaming the incident on a police department that was sometimes "confused" about the limits imposed by the United States Constitution. Additional training on the matter was promised.

2)     In July of 2005, political activist Jack Ames was improperly cited by Ocean City police for carrying protest signs on the Boardwalk without a permit. His signs were seized and destroyed. Because the ordinance under which the arrest occurred only applied to fixed signs, and not to portable, hand-held signs such as those carried by Mr. Ames, he was acquitted of the charges against him.

[3] Video recordings of Mayor and City Council sessions are available online, and video of the January 10, 2012 session is available at this link: http://www.oceancitymd.gov/City_Clerk/videofiles/20120110a.html.   Discussion of the Noise Ordinance begins at Part 2, 01:12:42, and concludes at 01:49:58.

[4] See Jan. 12, 2012 video, at Part 2, 01:27:02 through 01:27:17.

from 50 feet away.  During the first reading, an amendment was offered to change the proposed 50 foot restriction for noise violations to 30 feet, at least insofar as applied to the Boardwalk. The Mayor and City Council, with little debate, endorsed this change unanimously.

19.     At a subsequent session on February 6, 2012, Ordinance 2012-2, as amended during the first reading, was unanimously approved by the Mayor and City Council—again with little discussion.  Consequently, the Noise Ordinance now states in Part II, Chapter 30, Article V, Division 2, Section 30-272(2)b. of the Code of the Town of Ocean City, Maryland:

> The following acts, among others are hereby declared to be unreasonably loud noises in violation of this division:
> . . .
> (2) . . .
> b.  The using of, operating of, or permitting to be played, used, or operated any radio, receiving set, musical instrument, phonograph, sound amplification system, or other machine or device for the producing or reproducing of sound on or directed toward a public beach, the boardwalk, streets, or other public ways at any time, in such a manner as to be plainly audible at a distance of 30 feet from the source of such sound, which is deemed to be unreasonably loud so as to disturb the peace, quiet, and comfort of other persons, or at a louder volume than is necessary for the convenient hearing of the individual carrying the instrument, machine, or device, or those individuals immediately adjacent thereto and who are voluntary listeners thereto.

Plaintiff refers to this provision hereinafter as the "**30-Foot Audibility Restriction**."

20.     At the March 13, 2012 work session of the Mayor and City Council, then-Police Chief Bernadette DiPino advised that the Police Department would be trained to "aggressively" enforce the Noise Ordinance's new 30-Foot Audibility Restriction.[5]

21.     Guidelines produced and distributed to street performers subsequent to the enactment of the 30-Foot Audibility Restriction warned street performers that:

---

[5] Available at:   http://www.oceancitymd.gov/City_Clerk/videofiles/20120313.html.   Chief DiPino's remarks about the Noise Ordinance begin at Part 2, 00:31:41 and conclude at 00:31:59.

Any person playing a musical instrument or operating a sound amplification device that can be heard at a distance of 30 feet (roughly the width of the boardwalk) or greater is in violation of the Noise Ordinance and is subject to a penalty of three months in jail or/and a $500 fine. Any person who can be heard singing, yelling, hooting, hollering, or whistling at a distance of 50 feet are [sic] subject to a penalty of three months in jail or/and a $500 fine.[6]

C. Ocean City's Misapplication of the Noise Ordinance to the Boardwalk

22.    On information and belief, the Mayor and City Council did not engage in any acoustical analysis of the Boardwalk environment when it adopted the Noise Ordinance's new 30-Foot Audibility Restriction. In fact, nearly any musical instrument or device can be heard from 30 feet away in the Boardwalk's ambient environment, as can a host of other sounds created by the typical pattern of activity at the Boardwalk. Thus, enforcement of the 30-Foot Audibility Restriction is unduly burdensome on the First Amendment rights of street performers.

23.    On information and belief, Ocean City also has an official policy and/or longstanding custom and practice to restrict the ability of persons to exercise their rights to free speech on the Ocean City Boardwalk, the training policies of the Ocean City Police Department are not adequate to train Ocean City police officers to respect the free speech rights of individuals that perform there, and Ocean City has been deliberately indifferent to the obvious consequences of that failure to provide adequate guidance and training.

24.    Consequently, on information and belief, Ocean City police officers have enforced the Noise Ordinance against performers in a haphazard and discriminatory manner, depending on whether a particular merchant complains, whether they think, rightly or wrongly, that a particular performer might sue to enforce his or her rights, or any of a number of factors.

---

[6] Available at: http://oceancitymd.gov/City_Clerk/StreetPerformers.html.

25.     One notable example that demonstrates the uneven manner in which Ocean City police officers have enforced the Noise Ordinance concerns Mark Chase, the spray paint artist who challenged the permitting scheme for street performers in 2011.  On May 4, 2012, Mr. Chase returned to the Boardwalk for the 2012 summer season and set up to create artwork, accompanied by music played from a portable stereo to enhance his performance.  Almost immediately, police informed him that he needed to turn down his music, because it violated Ocean City's Noise Ordinance.  In response, Mr. Chase turned the music down, but the police insisted that it be turned down more and more, until it was barely audible even to Mr. Chase.

26.     Within days, Mr. Chase's counsel at the Rutherford Institute contacted the Ocean City Police Department and demanded that it cease enforcement of the Noise Ordinance against Mr. Chase, alleging both that the Noise Ordinance was facially unconstitutional, and that its enforcement against Mr. Chase was retaliation for his successful litigation against Ocean City.

27.     After becoming aware of the incident involving Mr. Chase and his attorneys' threats of litigation, then-Police Chief Bernadette DiPino told a local newspaper that—notwithstanding her prior representation to the Mayor and City Council that the law would be "aggressively" enforced—police would no longer enforce the Noise Ordinance against Mr. Chase.  Chief Dipino is quoted as saying: "Our officers are going to be very careful with Mark Chase.  He's very intimidating.  When there's a lawsuit, it hits in your pocket.  As we speak, I just got a message from his attorney telling us to cease and desist about the noise ordinance."  As a result, police permit Mr. Chase to play his music even if audible from more than 30 feet, while other performers such as Mr. Hassay might be threatened with arrest for the same conduct.

D.  Plaintiff William F. Hassay, Jr.'s Experience in Ocean City

28.     Plaintiff William F. Hassay, Jr., has been a professional musician for nearly 35 years, including work as First Violinist with the Alabama Symphony Orchestra.

29.     He has been performing on the Ocean City Boardwalk since 1995, blending the voice of his violin with the accompaniment of prerecorded music to create his signature sound.[7]

30.     Mr. Hassay's performances on the Boardwalk have proven extremely popular. During his performances, Mr. Hassay places a bucket in which passersby may place donations, and he typically is rewarded well for his performances.  During a summer season, Mr. Hassay often performs up to five to six nights each week on the Boardwalk, earning $250-$300 each night and up to $25,000 each season.

31.     As detailed above in paragraph 15.d., Mr. Hassay first encountered difficulties performing on the Boardwalk in 2009, when Ocean City's Mayor and City Council enacted an unconstitutional ban against amplification, and attempted to enforce the law against him. During May of 2009, Ocean City revoked Mr. Hassay's street performer permit pursuant to the amplification ban, as the permit had previously authorized Mr. Hassay to use a battery-operated CD player to accompany his violin performances.  Assisted by the ACLU, Mr. Hassay contacted Ocean City officials by letter and challenged the amplification ban.  In response, Ocean City agreed to suspend enforcement of the ban, and to consider its rescission.  In the interim, Mr. Hassay was unable to perform on the Boardwalk for a period of several weeks.

32.     Following Ocean City's suspension of the amplification ban in mid-July of 2009, Mr. Hassay returned to the Boardwalk and resumed his popular musical performances.  He continued to perform during the 2010 and 2011 summer seasons without incident—voluntarily

---

[7] A sample recording of one of Plaintiff's Boardwalk performances is available at this link: http://www.youtube.com/watch?v=GgHjJWDNLg4&feature=share.

complying with the registration and permitting requirements subsequently enjoined by this Court as unconstitutional in September of 2011.

33.     Shortly after he returned to Ocean City for the 2012 summer season, however, Mr. Hassay ran into difficulties related to Ocean City's newly-enacted 30-Foot Audibility Restriction.

34.     On June 18, 2012, Mr. Hassay was performing on the Boardwalk when he was approached by two Ocean City police officers, whose identities are unknown, and informed that he was in violation of the Noise Ordinance.  Mr. Hassay showed the officers a copy of the 2009 ACLU letter regarding Ocean City's prior amplification ban, and one officer responded: "That letter is three years old.  The Constitution has changed and we have new laws now."  When Mr. Hassay explained that his musical performance was constitutionally protected speech, the officer called for backup, and Corporal Richard Wawrzeniak arrived.

35.     Corporal Wawrzeniak reiterated the opinion that Mr. Hassay was in violation of the Noise Ordinance and disclosed that the police had received a complaint from the proprietor of Candy Kitchen, a boardwalk retailer.[8]  Mr. Hassay gave the 2009 letter to Corporal Wawrzeniak, who said he would run it by his superiors.  Mr. Hassay performed for the remainder of the evening, in full view of numerous Ocean City police officers.

---

[8] Candy Kitchen is a local sweetshop that has several locations on the Boardwalk, some of which are adjacent to areas where street performers are allowed to perform.  Candy Kitchen has a reputation as being hostile to street performers.  According to Corporal Wawrzeniak, in this instance Candy Kitchen claimed that Mr. Hassay was so loud they had lost a sale because they could not hear what the customer was saying.  Mr. Hassay and Corporal Wawrzeniak subsequently walked over to the Candy Kitchen while the sound system continued playing, and both observed that the music was barely audible from the entrance of the store.  Corporal Wawrzeniak conceded, Candy Kitchen "could probably adapt to it."

36.     Believing that the issue had been resolved, Mr. Hassay moved to a different location, at the junction of the Boardwalk and Somerset Street (again, not far from a Candy Kitchen shop), and performed without incident for several days.

37.     On June 22, 2012, however, Mr. Hassay was again confronted by Ocean City police officers.  On this occasion Sergeant James Grady told Mr. Hassay that he was "way, way too loud" and had generated another complaint.  Sergeant Grady stated that if Mr. Hassay was audible from 30 feet away, he would be written a citation for violating the Noise Ordinance.[9]

38.     Two unknown officers and Lieutenant Mark A. Pacini, who Mr. Hassay believes to have been the Boardwalk patrol commander, then joined Sergeant Grady.  All four officers remained on the scene while Lt. Pacini informed Mr. Hassay that he had used up his warnings and would receive a citation if he continued to be audible from a distance of 30 feet.

39.     Mr. Hassay asked who had complained and offered to move to a different location.  Lt. Pacini refused to reveal the source of the complaint, and informed Mr. Hassay that wherever he moved he would receive a citation if there was another complaint.  Mr. Hassay again asserted that his constitutional rights were being violated and warned the officers that the action might generate a lawsuit.  Lt. Pacini responded, "Bring it on."

40.     As the sound of a violin naturally carries beyond 30 feet in the ambient environment of the Boardwalk, Mr. Hassay immediately stopped playing music on the Boardwalk.  Fearing arrest if he again attempted to play on the Boardwalk, he thereafter left Ocean City until he could work out a solution to the problem raised by the Noise Ordinance.

---

[9] Mr. Hassay attempted to record the interaction with his cell phone camera (as is his right), but Sergeant Grady blocked the recording with his hand and asked that Mr. Hassay cease recording. Fearful of further antagonizing the police, Mr. Hassay ceased recording and put his phone away.

41.     Following this incident, Mr. Hassay contacted the ACLU of Maryland seeking assistance with a challenge to the Noise Ordinance.  In the meantime, he refrained from attempting any performances on the Boardwalk, and instead performed his music in less lucrative settings over the course of the 2012 summer season, thus losing significant income.

42.     On August 17, 2012, the ACLU sent a letter, via electronic and First Class Mail, to Ocean City officials and their counsel, detailing the difficulties that Mr. Hassay had experienced as a result of Ocean City's enactment and enforcement of the new 30-Foot Audibility Restriction, and challenging the restriction as unconstitutional.  The letter requested that Ocean City contact the ACLU at its earliest opportunity.  But no response to the correspondence was ever received, leading to the filing of this lawsuit.

## V. CAUSES OF ACTION

### Count I

**Ocean City's Noise Ordinance is Facially Unconstitutional
Under the First and Fourteenth Amendments
(All Defendants)**

43.     Plaintiff repeats and re-alleges paragraphs 1 to 42, as if set forth fully herein.

44.     By criminalizing nearly all musical performances on the established public forum of the Ocean City Boardwalk, the new 30-Foot Audibility Restriction in Ocean City's Noise Ordinance impermissibly burdens substantially more constitutionally protected speech than is necessary or appropriate to serve Ocean City's governmental interests.

45.     In that music is a unique and important means of expression, particularly for street performers such as Plaintiff, the new 30-Foot Audibility Restriction also does not leave open adequate alternative channels of communication on the Boardwalk.

46.     Accordingly, the Noise Ordinance is unconstitutional on its face.

47.     Ocean City's maintenance of a facially unconstitutional Noise Ordinance, combined with its policy, custom, and/or practice of interfering with street performers' First Amendment rights, threatens, chills, and deters the exercise of free speech by Plaintiff and, on information and belief, other street performers as well.

### Count II

**Ocean City's Noise Ordinance is Unconstitutional As Applied to Plaintiff Under the First and Fourteenth Amendments and 42 U.S.C. § 1983 (All Defendants)**

48.     Plaintiff repeats and re-alleges paragraphs 1 to 47, as if set forth fully herein.

49.     Ocean City's Noise Ordinance, as interpreted and enforced by the Defendants against Plaintiff, is unconstitutional because the overbroad 30-Foot Audibility Restriction prevented Plaintiff, and continues to prevent him, from exercising his fundamental right to freedom of speech under the First and Fourteenth Amendments to the United States Constitution.

50.     On information and belief, in violating Mr. Hassay's rights, Ocean City's police officers, including without limitation Corporal Wawrzeniak, Sergeant Grady, and Lieutenant Pacini, also acted pursuant to an official policy of Ocean City and/or a longstanding custom and practice restrict the ability of persons such as Mr. Hassay to exercise their free speech rights on the established public forum of the Ocean City Boardwalk.

51.     On information and belief, Ocean City's failure to provide adequate guidance and training on the interpretation and enforcement of the Noise Ordinance and the rights of street performers on the Boardwalk also caused Ocean City's police officers, including without limitation Corporal Wawrzeniak, Sergeant Grady, and Lieutenant Pacini, to deprive Mr. Hassay of his rights under the First and Fourteenth Amendments to the United States Constitution.

52.     On information and belief, as a consequence of the substantial overbreadth of the Noise Ordinance, the absence of adequate police training, and Ocean City's deliberate indifference to Plaintiff's constitutional rights, Plaintiff was illegally singled out by Ocean City's police officers, including without limitation Corporal Wawrzeniak, Sergeant Grady, and Lieutenant Pacini, as a target for discriminatory enforcement of the Noise Ordinance.

53.     The actions, omissions, policies, customs, and practices of the Defendants in enforcing the unconstitutional Noise Ordinance are causing irreparable harm to Mr. Hassay due to interference with his rights under the First and Fourteenth Amendments to the United States Constitution, for which he has no adequate remedy at law.  In addition, Mr. Hassay has suffered monetary damages in the form of lost donations in appreciation of his musical performances.

## VI.  PRAYER FOR RELIEF

Wherefore, Plaintiff prays that this Court enter judgment in his favor and against the Defendants, as follows:

A.     DECLARE, pursuant to 28 U.S.C. § 2201, that Ocean City's Noise Ordinance is unconstitutional on its face because the 30-Foot Audibility Restriction unduly proscribes speech and musical performances that are protected by the First and Fourteenth Amendments to the United States Constitution;

B.     DECLARE, pursuant to 28 U.S.C. § 2201, that the Defendants' threatened enforcement of Ocean City's Noise Ordinance against Plaintiff in June of 2012 unduly infringed his rights to freely engage in speech and musical performances, and denied him equal protection of the laws, in violation of the First and Fourteenth Amendments to the United States Constitution;

C.     PRELIMINARILY AND PERMANENTLY ENJOIN Defendants from enforcing the 30-Foot Audibility Restriction, as in violation of the First and Fourteenth Amendments to the United States Constitution;

D.     AWARD Plaintiff damages for losses he suffered as a result of the Defendants' threatened enforcement of the Noise Ordinance against him during the summer of 2012, in an amount to be determined by the jury;

E.   AWARD Plaintiff his reasonable attorneys' fees and costs, as provided for under 42 U.S.C. §1988;

F.   AWARD Plaintiff his reasonable experts' fees and costs, as provided for under 42 U.S.C. §1988; and

G.   GRANT such other general and equitable relief as the Court may deem just.

## VII.  JURY DEMAND

Plaintiff demands a jury trial on all matters triable as of right by a jury.

Dated: April 10, 2013
       Baltimore, MD

Respectfully submitted,

Deborah A. Jeon, Bar No. 06905
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MARYLAND
3600 Clipper Mill Road
Suite 350
Baltimore, MD 21211
Tel:  (410) 889-8555
Fax:  (410) 366-8669

- and -

James W. Burke (*pro hac vice* admission pending)
Jonathan P. Guy, Bar No. 12316
Kathleen A. Orr, Bar No. 28076
ORRICK, HERRINGTON & SUTCLIFFE LLP
1152 15th Street, N.W.
Washington, D.C.  20005-1706
Tel:  (202) 339-8400
Fax:  (202) 339-8500

*Counsel for Plaintiff William F. Hassay, Jr.*